CHARLES M. DARBY, Administrator of Estate of SAMUEL E. DARBY, v. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Appellant.

*Division One, March 14, 1922.*

1. **LIFE INSURANCE: Payment of Premiums: Time of Essence: Forfeiture.** Where a policy of life insurance provided that upon default in the payment of any premium the policy should cease and determine, except that insured should have a period of thirty-one days' grace for the payment of every premium except the first, and a right of reinstatement upon certain conditions after default, the time for payment of the premiums was of the essence of the contract and a failure to pay a premium when due worked a forfeiture of the policy subject to the exceptions above mentioned.

2. ———: ———: Medical Examination: Waiver. In a suit on a policy of life insurance, where the issues, under the pleadings and the evidence, were whether the company had waived a medical

(1)

examination of the insured as required by the policy, after a default in payment of a premium, and also whether the receipt by an agent of the company of a note of the insured amounted to a payment of the defaulted premium with interest and constituted a waiver of the conditions of the policy, it was prejudicial error for the trial court to admit in evidence for the plaintiff, over defendant's objections, testimony that the insured was in good health for several days immediately preceding the attack of influenza, which caused his death and notes given by insured two years before the issuance of the policy in suit and connected with two previous policies which had lapsed and letters referring to such notes, inasmuch as none of such evidence was relevant to the issues in the case and was misleading to the jury and wholly incompetent.

3. ————: **Transactions with Deceased: Agent of Company: Competency as Witness.** In a suit on a policy of life insurance, the agent of the company, not being the real party in interest, is a competent witness to testify as to conversations and transactions had by him as such agent with the deceased insured and relating to the matters in issue in such suit.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker*, Judge.

REVERSED AND REMANDED.

*Nagel & Kirby* for appellant.

(1) Time is of the essence of a contract of insurance and the failure to pay premiums when due works a forfeiture, if the policy so provides. Ashbrook v. Life Ins. Co., 94 Mo. 72; Suess v. Life Ins. Co., 193 Mo. 564; Gaterman v. Life Ins. Co., 1 Mo. App. 300; Sick v. Life Ins. Co., 79 Mo. App. 609. (2) The court admitted evidence immaterial and irrelevant and prejudicial to appellant. (3) The instruction of the court given at the request of the plaintiff was erroneous, because there is no evidence in the record to support the submission to the jury of certain questions of fact. Dakan v. Mercantile Co., 197 Mo. 264. (4) The death of Samuel E. Darby did not render appellant's agent incompetent to testify to conversations and transactions between himself and de-

ceased. Clark v. Thias, 173 Mo. 628; Inv. Co. v. Lead Co., 251 Mo. 721; Wagner v. Binder, 187 S. W. 1152; Allen v. Jessup, 192 S. W. 720; Prindle v. Fid. & Cas. Co., 233 S. W. 252. (5) There is no evidence in the record that appellant waived the forfeiture or any of the provisions of the policy. Nelson v. Life Ins. Co., 190 Pac. 927; Clark v. Life Ins. Co., 106 Mich. 160; Hoyle v. Life Assur. Assn., 183 N. W. 50; Gould v. Life Assur. Soc., 231 N. Y. 208; Realty Co. v. Kelly, 278 Mo. 472.

*Wammack & Welborn* for respondent.

(1) The acceptance of the payment of the premium on a life insurance policy after it is due, and after the expiration of the days of grace, waives the failure to pay such premium within the allowance of time. Andrus v. Ins. Co., 168 Mo. 151; Jaggi v. Ins. Co., 191 Mo. App. 384; Spencer v. Life Ins. Co., 200 S. W. 80; James v. Life Assn., 148 Mo. 1; Thompson v. Ins. Co., 104 U. S. 252; Andre v. Modern Woodmen, 102 Mo. App. 377; Godwin v. K. L. S., 166 Mo. App. 297; Nichols v. Ins. Co., 170 Mo. App. 437; Wichmann v. Ins. Co., 120 Mo. App. 51; Reed v. Bankers Union, 121 Mo. App. 419; Francis & Hunter v. A. O. U. W., 150 Mo. App. 347; Manning v. Ins. Co., 176 Mo. App. 678; Wright v. Life Ins. Co., 204 Mo. App. 124. (2) If the agent of an insurance company takes a note in payment of a premium and treats the same as a payment of the premium, this constitutes a payment of the premium so as to bind the company issuing the policy. Berryman v. Surety Co., 227 S. W. 96; Kimbro v. Life Ins. Co., 134 Iowa, 84; McGee v. Felter, 135 N. Y. Supp. 267; Clark v. Ins. Co., 61 S. E. 80; Life Ins. Co. v. Hairston, 108 Va. 832; Ins. Co. v. Norton, 96 U. S. 234; Malone v. Life Ins. Co., 202 Mo. App. 499. (3) The law abhors a forfeiture and where there is substantial evidence of facts from which it may be found that an insurer has waived a forfeiture clause in its policy, the matter is one to be referred to the jury under appropriate instructions. Barber v. Ins.

Co., 279 Mo. 331; Jaggi v. Ins. Co., 191 Mo. App. 391. (4) If the evidence is sufficient to show waiver on the part of the one against whom it is invoked, it is not necessary that the insured even know of it.     Watkins v. American Yeomen, 188 Mo. App. 636; Galvin v. Knights, 169 Mo. App. 511; Stiepel v. Life Assn., 55 Mo. App. 233; Equitable Life Ins. Co. v. Ellis, 147 S. W. 1152.

ELDER, J.—This is an action upon a policy of insurance for $10,000, issued by defendant on the life of Samuel E. Darby, payable to the estate of said Darby. Suit was brought by plaintiff as administrator of the said estate. On a trial before a jury a verdict was returned in favor of plaintiff for the sum of $10,600. From a judgment rendered thereon defendant has appealed.

The petition is conventional, alleging the execution and delivery of the policy on April 27, 1918; the payment by the insured of the premiums accrued and due; the death of the insured from influenza and pneumonia; the request for blank forms for making proof of death and the refusal of defendant to furnish same; the denial by defendant of liability; and the non-payment of the amount of the policy.

The answer, after admitting the execution and delivery of the policy, denies that at the time of the death of Samuel E. Darby it was in force and effect, but avers that the semi-annual premium of $133.10 due on October 27, 1918, was not paid by the insured, or anyone in his behalf, on that date, or at any time thereafter, and that by reason thereof the said policy lapsed 31 days thereafter, to-wit, on November 27, 1918, and remained null and void at all times thereafter. The answer further denies each and every allegation of the petition.

The reply admits that the semi-annual premium due October 27, 1918, was not paid when due, or within thirty-one days thereafter; denies that the policy thereby lapsed and became null and void; and avers that on January 3, 1919, pursuant to an arrangement then and there made

between one A. V. Bayley, Jr., as the agent and representative of defendant, and Samuel E. Darby, the insured, the said Darby executed and delivered to the said Bayley, as the agent and representative of defendant, his promissory note for $70.20 to cover the payment of a quarterly premium on said policy and certain other charges of defendant, and to renew and continue in force the said policy until January 27, 1919, and thirty-one days thereafter. The reply further alleges that said Samuel E. Darby, at the request of the said Bayley, went with the said Bayley on January 3, 1919, to the office of defendant's medical examiner at Essex, Missouri, to submit to a medical examination, but that the said doctor was not at his office and the examination could not be had that day, and thereupon the said Bayley retained said note and went away from Essex without having obtained such examination; that on said day the insured was in good health, but that on January 6, 1919, he was seized with an acute attack of influenza and pneumonia and died on January 12, 1919, leaving sufficient property to pay all demands against the estate; that said Bayley turned the note aforesaid over to defendant in payment of the quarterly premium, and that defendant retained possession of said note and was in possession thereof at the time of the death of the insured; that plaintiff has offered, and now renews his offer, to pay the amount of said note, but that defendant has refused to accept payment thereof; that by the acts of defendant, and by the giving of said note, defendant waived the prompt payment of the semi-annual premium aforesaid, and the said policy was thereby renewed and continued in full force and effect, and was in force and effect at the time of the death of the insured.

The policy, which was filed with the petition, provides that premiums may be paid semi-annually or quarterly, in advance; that no premium after the first will be considered paid (except it be charged as a premium loan) unless a receipt, signed by the president or secretary of the company, and countersigned by an agent au-

thorized to receive such premium, shall have been given therefor; that "upon default in the payment of any premium this policy shall cease and determine except as hereinafter provided;" that a grace of thirty-one days shall be allowed for the payment of every premium except the first; and that the policy "may be reinstated at any time within five years succeeding default in premium payment, *upon evidence satisfactory to the company of the insurability of the insured and payment of all premium arrears with interest at the rate of five per cent per annum.*" (Italics ours).

Iva E. Darby, widow of Samuel E. Darby, testified that she remembered the circumstances of her husband taking out the policy sued on; that A. V. Bayley, Jr., represented defendant when the policy was written; that on January 3, 1919, Mr. Bayley "came there to get my husband to renew his insurance;" that on that day her husband gave Bayley a note which was returned to her after her husband's death; that on January 3, 1919, her husband's health was good; that on January 4th he went to Bloomfield where he spent most of the day, and on January 5th he was at home until in the afternoon, and that during that day he left the house for the purpose of going to Dr. Brandon's office to see the doctor; that her husband had no dealings with anyone except Mr. Bayley about the insurance in question; and that she did not know the scope of Bayley's powers.

Dr. J. P. Brandon testified on behalf of plaintiff that in January, 1919, and for several years prior thereto he was the medical examiner of defendant at Essex, Missouri; that he had been the family physician of Samuel E. Darby, the deceased; that along about the first or second of January A. V. Bayley, Jr., came into his office alone, bringing a short form examination blank, and asked him if he would examine Mr. Darby; that it was late in the afternoon and Mr. Bayley "seemed to be in a hurry and wanted to get away on the train, I suppose;" that witness never made a medical examination of Mr. Darby after that time and never saw him at his office,

but was called on the morning of January 6th to attend him in his last illness; that after Bayley had requested him to examine Darby, witness met the latter on the street on Saturday at noon and Darby said: "I'm coming up to have that blank filled out;" that witness told him to come up the next morning, which was Sunday, and that witness was in his office at nine o'clock that day and most of the day thereafter; that on Saturday when witness saw Darby he seemed to be in perfect health. On cross-examination witness stated that on the first or second day that Darby was sick "he was asking me what about the insurance, and I told him, 'We can't do anything with that now, because you have got to be in sound health.'"

Plaintiff then offered in evidence a note signed by Samuel E. Darby, dated Essex, Missouri, January 3, 1919, due February 1, 1919, for the sum of $70.20, payable to the order of A. V. Bayley, Jr., at the office of the Farmers Bank of Essex, Missouri, with interest from date at the rate of six per cent per annum.

Plaintiff also offered in evidence a letter dated St. Louis, Mo., January 21, 1919, addressed to Mrs. Samuel E. Darby, and signed by W. J. Fischer, general agent of defendant, returning the note in question and stating in part:

"This note is doubtless what Mr. Bayley referred to in his letter of January 10th to Dr. Brandon, urging the execution of the medical certificate which was necessary for the reinstatement. I found this note attached to copies of two letters, one addressed to Dr. Brandon, above referred to, and another addressed to Mr. Darby under date of January 10th, both dictated from this office, doubtless because Mr. Bayley was disappointed that the examiner's certificate had not reached this office. Mr. Bayley left this office (without leaving any specific address), for the Pacific Coast, to be gone a month or six weeks, and I am sure that he will regret that his attempt to be of service to you and your family in this instance failed in its purpose."

Over the objection of counsel for defendant, Charles M. Darby, the plaintiff, testified that the deceased was apparently in good health on January 3rd, 4th and 5th; that he "left plenty of assets to have paid this note," and that witness had authorized the payment of the note if defendant would pay the policy. The witness also testified that he had made out proofs of death and sent them to defendant, and that he knew nothing of the scope of Mr. Bayley's authority as agent of defendant.

On behalf of plaintiff there was further offered in evidence a letter to S. E. Darby, dated St. Louis, Mo., November 22, 1918, signed by W. J. Fischer, General Agent, advising that the period of grace allowed for the payment of the semi-annual premium of $133.10 due on the policy would expire November 27th, and "if the premium is not paid within the grace period, it will be necessary to furnish a short form medical examination at your expense to reinstate the policy." There was also introduced a note for $60, dated St. Louis, Mo., April 27, 1918, signed by S. E. Darby, and payable to the order of A. V. Bayley, Jr.

On behalf of defendant, A. V. Bayley, Jr., testified that in 1918 he was district agent for defendant in southeast Missouri; that in 1916 he sold Mr. Darby a policy which lapsed and was reinstated once or twice, and that on these reinstatements the usual short form for medical examination was gone through; that in April, 1918, he sold Mr. Darby the policy sued on and at that time the premium was paid for six months; that the next semi-annual premium was not paid when due; that he was not authorized to receive any notes on behalf of the company except a special form of premium note that is usuable after two years, when the policy has a loan value; that in taking the note of January 3, 1919, "I did not accept that on behalf of the company. After I got that note I took it to my office and held it among other notes that I owned until I went west on a trip. I then took the note to St. Louis to the St. Louis office and placed it in the hands of a stenographer there with certain in-

structions. I never transferred, sold or indorsed this note. It was my property at all times. The company had no interest in this note at all. . . . When the agent accepts a note from an applicant he is responsible to the company for the premium, regardless of the kind of settlement he makes with the applicant. I take the note and receipt to the company in cash, either carrying the note myself or having some bank assist me in carrying it." The witness further testified that in case of a reinstatement of the policy no agent of the company is authorized to waive a medical examination.

William J. Fischer testified that for fifteen years he had been general agent for defendant in eastern Missouri, having fifty-two counties under his jurisdiction, including Stoddard County; that defendant never receives payment of premiums in notes other than on policies more than two years old; that neither he nor his office is authorized to waive any provisions of a policy regarding reinstatement, and that no provision was waived with respect to the policy sued on; that when notes are taken from sub-agents "I accept the notes as cash where the policy has been issued, and sometimes discount them at the bank and sometimes carry them in my office if I can. If the notes are not paid I charge them to the agent's account after maturity, and I remit net to the home office in cash. In doing that I act as an individual and not as an agent of the company. . . . I did not carry for Mr. Bayley the two premium notes in connection with the policy sued on in this action. I never saw the note taken in payment of the first semi-annual premium. As to the note taken for the reinstatement, Mr. Bayley was *en route* to San Francisco and he wrote two letters, one to Dr. Brandon and one to Mr. Darby from my office, and left the note attached to these letters so that when the short form of examination was received and passed upon by the home office, the note would become effective at that time and I would have charged it to his account. The short form for medical examination was never received in my office."

A. S. Hathaway, secretary of the defendant company, testified that as secretary he has charge of the issuance of policies, collection of premiums, payment of dividends and commissions, and the reinstatement of lapsed policies; that the medical director, or medical department, passes on the evidence of insurability for reinstatement; that the company does not authorize general agents or others to take notes for premiums; that if agents do accept notes they do so entirely at their own risk and are obliged to report the premium to the company just as though collected in cash; that where a policy lapsed for non-payment of premium, if payment was not made within the thirty-one day period of grace, the insurance "would go wholly out of force, and it could thereafter be reinstated only by payment within five years from the date of default of the amount of all past due premiums, with interest, and subject to evidence of insurability satisfactory to the medical department of the home office. Before reinstatement of the policy in suit, the evidence of insurability and medical examination would have to be passed on in behalf of the company by the medical department at the home office. The premium due October 27, 1918, was not paid on the date due or within the grace period thereafter, and there is no evidence whatever of the receipt by the company on account of this policy of any payment, either from the insured or any agent, subsequent to the initial semi-annual premium."

Dr. J. W. Fischer, medical director of defendant, stated that in order to reinstate the policy sued on, it was necessary "for a medical examination to be made by one of our appointed examiners, showing insurability and approval by the medical director or one of his assistants at the home office;" that "no evidence of medical examination or physical examination or of the insurability of the policyholder, Samuel E. Darby, was received by the company at any time after the policy in question was issued;" that in order to determine the insurability of Mr. Darby for reinstatement it would have been neces-

sary for him to have presented himself to Dr. Brandon, the local examiner, and for the doctor to have made an examination, and for Mr. Darby to have signed the "statement for restoration;" that in order to pass upon the insurability for reinstatement, "we require a record of the rate and quality of applicant's pulse, as to whether there is any degeneration of the blood vessels, as to whether his heart is normal, his lungs, his actual weight, whether he has a hernia, if so whether it was retained by a well-fitting truss, an examination of the urine and his blood pressure, and a statement from the applicant as to whether he has had any illness or constitutional diseases or injury or has been confined to his house by illness since his policy lapsed, a statement in regard to his habits and the use of stimulants, the cause of death of members of his immediate family since the policy was issued, and whether he had consulted a physician for any reason since the policy had lapsed." The witness also stated "we had no medical examiner at Essex, Missouri, other than Dr. J. P. Brandon, between the date of this policy and January 12, 1919, who was authorized to examine Mr. Samuel E. Darby for reinstatement of his policy."

Defendant then offered in evidence a blank form of the "Statement for Restoration" referred to by Dr. Fischer. After setting forth several questions to be answered by the insured, the statement closes with the following declaration to be signed by the insured:

"Said policy having lapsed, I desire to have the same reinstated, and herewith pay the past due premiums and interest, with the understanding that no liability exists on the part of the company until said company, at its home office in Milwaukee, shall have assented to the reinstatement of said policy, nor shall said policy be deemed to be in force, unless upon the date of its reinstatement by the company aforesaid, I shall be alive and in good health."

George E. Copeland, superintendent of agencies for defendant, testified in part as follows:

"The company does not authorize general agents or other agents to take notes for premiums on policies in the company. If Mr. Bayley took a note from Samuel E. Darby for an amount equal to a premium on account of a proposed reinstatement of Mr. Darby's policy, he was not authorized by the company to do so. A general agent or other agent has no authority whatever to reinstate or make any agreement for reinstatement of a lapsed policy. The power of an agent of the company in connection with a proposition for reinstatement of a lapsed policy is limited to accepting the premium with the proper medical certificate, and forwarding it to the company for its action, giving a conditional receipt therefor."

The foregoing fairly and somewhat fully outlines the case made. At the close of plaintiff's case and again at the close of the entire case defendant requested an instruction in the nature of a demurrer to the evidence, which instruction was refused. On behalf of plaintiff the court gave but one instruction, not necessary to be noted here. Further matters essential to a consideration of the errors assigned will be noted in the course of the opinion.

I. Defendant contends that the court erred "in admitting evidence incompetent, immaterial and irrelevant to any issue in the case and prejudicial to appellant."

Before proceeding to a consideration of the error assigned, it might be well to determine the issues actually involved. The policy sued on provides that "upon default in the payment of any premium this policy shall cease and determine except as hereinafter provided." The exceptions referred to are a period of thirty-one days' grace and a right of reinstatement after default. The dates when the semi-annual premiums became due were April 27th and October 27th of each year. Under the decisions time became the essence of the contract and the failure to pay a premium when due worked a forfeiture of the policy,

**Failure to Pay Premium.**

subject to the exceptions above mentioned. [Ashbrook
v. Phoenix Mut. Life Ins. Co., 94 Mo. 72; Suess v. Imperial Life Ins. Co., 193 Mo. 564; Gaterman v. American
Life Ins. Co., 1 Mo. App. 300; Sick v. Ins. Co., 79 Mo.
App. 609.] By the reply of plaintiff it is admitted that
the semi-annual premium due October 27, 1918, was not
paid by the insured at the time the same was due or
within thirty-one days thereafter. Such being the case,
the policy was, according to its terms, terminated by the
default, subject only to the right of the insured to be reinstated. The terms of reinstatement were that "evidence satisfactory to the company of the insurability
of the insured" should be furnished, and that all premium arrears should be paid with interest. One of the
**Reinstatement.** requirements incident to furnishing evidence
of insurability was for the insured to undergo a medical examination. There was no proof of the
insured having been so examined. To the contrary there
was evidence that he had not been examined. The principal issue made by the pleadings and evidence therefore was, whether or not the defendant had waived the
medical examination. The remaining issue presented
was whether or not the receipt by the agent Bayley, of the
note dated January 3, 1919, amounted to a payment of
the defaulted premium with interest and constituted a
waiver of the conditions of the policy. With these issues in mind we approach the claim of error urged.

On behalf of plaintiff the court admitted in evidence,
over the objection of defendant, three notes signed by
S. E. Darby, for $45, $65 and $126.25, respectively, dated
August 12th, March 10th and March 23, 1916, respective-
**Evidence.** ly, one thereof being payable to A. V. Bayley,
Jr., and two being payable to Ira S. Rice and
A. V. Bayley, Jr., together with three letters signed by
Wm. J. Fischer, General Agent, addressed to S. E.
Darby, calling attention to the maturity of said notes
and requesting payment thereof. According to the record
there is no testimony tending to show the purpose for
which the said notes were given. From the briefs, how-

ever, we gather that they were given in connection with the payment of premiums on two previous policies for $5,000 each, taken out by Darby in the year 1916, which policies had also lapsed. There was no proof that the notes were given or received after default in the payment of premiums on the said prior policies. Manifestly they were not admissible to show a waiver of any condition or provision of the policy sued on or of any forfeiture thereunder. Nor were they admissible to show a course of dealing on the part of defendant which might amount to a waiver. [Suess v. Imperial Life Ins. Co., 193 Mo. 564.]

Over the objection of defendant the court also permitted the widow of Mr. Darby to testify as to the state of his health on January 3rd. Similarly, the court allowed Dr. Brandon to testify that when he saw Darby on the street on Saturday, January 4th, he seemed to be in perfect health. Again, the court permitted the plaintiff to testify as to the apparent good health of Darby on January 3rd, 4th and 5th and that there was an epidemic of influenza in the community and that "doctors were in great demand."

None of the above-mentioned evidence was relevant to the questions at issue, and all thereof was prejudicial to defendant. The notes introduced had nothing whatever to do with the policy sued on and were misleading to the jury. The statements as to Darby's good health just prior to his death, as to the prevalence of influenza and as to the business of doctors were offered solely to show the lack of necessity of a medical examination or in excuse for the failure of Darby to complete the examination required. They shed no light, however, upon the question of waiver of the examination. All of the evidence was incompetent on any theory applicable to the case and should have been excluded.

II. Defendant urges that the court erred in excluding competent, relevant and material evidence offered

Darby v. Northwestern Mut. Life Ins. Co.

**Conversation
With Deceased.** by defendant. The evidence excluded was testimony of the witness A. V. Bayley, Jr., adduced upon direct examination, as follows:

"Q. At the time you took this note from Mr. Darby on January 3, 1919, did you explain to him that before the policy was reinstated he would have to go through the regular short-form examination? A. I did.

"MR. WAMMACK: I object to that, Your Honor, on the ground that this witness is incompetent to testify to any contract or arrangement made with Mr. Darby on the 3rd day of January, 1919, at the time this note was given, because Mr. Darby is dead and is not here to testify in the case.

"THE COURT: Sustained.

"To which ruling of the court defendant duly excepted and still excepts."

A question almost identical with that before us has recently been passed upon by the St. Louis Court of Appeals in Prindle v. Fidelity & Casualty Co., 233 S. W. 252. There it was urged that the death of one Mrs. Henshaw, the insured, did not render the casualty company's soliciting agent, Manker, incompetent to testify to conversations or transactions between himself and the deceased. The court held such insistence to be correct, saying, at page 255:

"Mr. Manker, as appellant's agent, not being a real party in interest, was not disqualified from testifying to conversations with Mrs. Arla A. Henshaw by reason of her death."

To the same effect have been the rulings of this court in Wagner v. Binder, 187 S. W. 1128; Clark v. Thias, 173 Mo. 628, and Allen v. Jessup, 192 S. W. 720.

Plaintiff contends, however, that as the answer remained in the record there is nothing of which defendant can complain. If it be true that the witness's answer was not in effect stricken out by the sustaining of the objection, then plaintiff's claim that a medical examination was waived, which claim is stressed throughout the

brief, is flatly contradicted. However, the sustaining of the objection had the effect of holding the witness incompetent to testify as to any conversations had by Bayley with the deceased. That being the case it was useless for defendant to proceed further with any interrogation along that line. The error consisted in holding the witness incompetent, which clearly under the decisions he was not. Defendant's contention must therefore be sustained.

III.    Others errors, including an alleged error in the instruction given on behalf of plaintiff, are assigned. However, in view of our rulings under Paragraphs I and II above, it will be necessary that the cause be retried, when any further errors, if error exists, can be corrected.

Our order is that the judgment of the circuit court be reversed and the cause be remanded for a new trial, to be had in accordance with the views herein expressed. All concur.